UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
MILTON CAMPBELL,                              :
                                              :
                    Plaintiff,                :
                                              :
            v.                                :        25-CV-2148 (SFR)
                                              :
GUADARRAMA et al,                             :
                                              :
                    Defendants.               :
------------------------------------------------------------------ x

## **INITIAL REVIEW ORDER**

Plaintiff Milton Campbell, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se* under 42 U.S.C. § 1983 against five defendants: Warden Guadarrama, Shift Commander Valentin, Officer Koon, RCOO Jennifer Cruz, and Dr. Pierre Estime. The Second Amended Complaint[2] suggests claims of unsafe conditions of confinement and deliberate medical indifference in violation of the Eighth Amendment. Campbell sues Defendants in their individual and official capacities and seeks damages and injunctive relief.

For the reasons explained below, the Second Amended Complaint may proceed to service.

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function shows that Campbell was sentenced on December 15, 2010, and is imprisoned at MacDougall-Walker Correctional Institution.

[2] Campbell amended the complaint as of right on March 20, 2026. ECF No. 15. I later granted him leave to amend a second time. ECF No. 17. The Second Amended Complaint is therefore the operative pleading.

1

## I.    BACKGROUND

I accept as true the following well-pleaded facts in the Second Amended Complaint ("SAC"), ECF No. 18.

On July 21, 2025, at 2 PM, a fire broke out in the laundry room across the hall from Campbell's cell. SAC 7, ¶ 1. About thirty minutes after the fire code was called, smoke entered Campbell's cell through the ventilation system. *Id.* Due to the smoke filling his cell, Campbell had trouble breathing and requested that Officer Koon call for medical assistance. *Id.* Campbell told Koon that he had serious medical conditions and that the smoke was adversely affecting him. *Id.* He alerted Koon that he was having difficulty breathing due to the smoke exposure; suffering from a bad headache, chest pains, and a nosebleed; and coughing up "black spit." *Id.* Koon stated that he would do what he could, and walked away from Campbell's cell door. *Id.* Campbell was not seen by the medical unit on July 21, 2025. *Id.*

It appears that DOC evacuated prison dogs but did not evacuate Campbell and other prisoners. *Id.* at 9, ¶ 4. According to the SAC, if the smoke presented a danger to prison dogs, "it is also unsafe for the human beings to be in the smokey cells." *Id.* At the time of the fire, there was no lieutenant, captain, or shift commander checking on the prisoners confined in their cells even though the smoke was filling the cells in Campbell's unit. *Id.* at 11, ¶ 10. Campbell maintains that DOC staff ignored the policy or practice to evacuate prisoners when smoke enters a cell through the air ventilation system. *Id.* at 11, ¶ 9.

Smoke remained in Campbell's cell until 7 PM, which means that Campbell was exposed to smoke for five hours. *Id.* at 13, ¶ 12.  Campbell became sick due to the conditions of his smoke-filled cell on July 21, 2025. *Id.* In addition to the symptoms communicated to

Koon, Campbell felt dizzy, suffered an "excruciating migraine," and experienced crushing chest pain that made it hard to breathe as he felt like his lungs were collapsing. *Id.* at 7, ¶ 2.

The next day, Campbell saw a nurse and a doctor at the prison medical unit. *Id.* at 9, ¶ 5. The doctor examined Campbell's chest, lungs, mouth, throat, nose, and ears and advised that he needed an E.K.G. test and X-rays of his chest and lungs. *Id.* The nurse informed Campbell that he would see his provider the next day. *Id.* Campbell worried about how his other medical conditions, including failing kidneys, would be affected by the smoke inhalation. *Id.*; *see id.* at 13, ¶ 12.[3]

Campbell experienced a lot of pain in his chest and lungs and his throat felt like it was burning with pain. *Id.* at 11, ¶ 6. He had another nosebleed when he returned to his cell. *Id.* He suffered from a headache for eight days while he tried to cope with all that was happening to him. *Id.*

Campbell wrote "multiple" inmate requests to his doctor, Dr. Estime, for medical assistance related to his smoke inhalation, migraine headache, and chest and lung pain. *Id.* at 11, ¶ 7; *id.* at 13, ¶ 13; *id.* at 15, ¶ 20. He requested medical treatment for his breathing problem resulting from his smoke exposure. *Id.* at 13, ¶ 13. Dr. Estime did not respond to Campbell's requests for medical assistance, nor did he take any action to address Campbell's breathing problems. *Id.* at 11, ¶ 7; *see also id.* at 13, ¶ 14.

---

[3] Campbell alleges he has failing kidneys, and the smoke exposure has "added to the problem . . . . leaving [him] in a more vulnerable position." *Id.* at 13, ¶ 12.

Campbell sent an inmate request and medical grievance to RCOO Cruz about the smoke in his cell and his lack of medical treatment related to his smoke exposure on July 21, 2025. *Id.* at 11, ¶ 8. Campbell does not indicate whether he received a response from RCOO Cruz.

Campbell also sent an inmate request and grievance to the shift commander (presumably Defendant Valentin) and Warden Guadarrama. Campbell complained about his breathing difficulty due to smoke entering his cell through the air conditioning system; Campbell requested medical assistance but was ignored. *Id.* at 13, ¶ 11.

In January 2026, Campbell was prescribed Albuterol Sulfate Inhalation treatment for his breathing problems caused by his exposure to the smoke during the fire on July 21, 2025. *Id.* at 15, ¶ 21. He is now receiving treatment for his difficulty breathing from the prison medical unit. *Id.*

## II.    <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which an incarcerated plaintiff seeks redress from a governmental entity or officer and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and internal quotation marks omitted).

## III.    **DISCUSSION**

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test

5

for supervisory liability" in order to hold a state official liable for damages under § 1983 and "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

### A.    Eighth Amendment

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. An incarcerated person may assert claims against prison officials based on unsafe conditions of confinement and deprivation of medical care. *See Suarez v. Morton*, 170 F.4th 33, 59 (2d Cir. 2026). I understand Campbell to assert both types of Eighth Amendment claims.

To demonstrate an Eighth Amendment violation, a plaintiff must satisfy both an objective and subjective element. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). First, an incarcerated person must demonstrate that "the alleged punishment [was] 'objectively, sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Objectively serious punishment includes, among other things, conditions of confinement that pose an unreasonable risk of serious damage to health and deprivation of adequate medical care. *Suarez*, 170 F.4th at 59. As for the second element, the subjective prong, the plaintiff must allege facts to show the prison official defendant acted with a "sufficiently culpable state of mind" of "deliberate indifference" to the prisoner's health and safety and/or medical needs. *Farmer*, 511 U.S. at 834.

For an Eighth Amendment claim related to medical needs, the plaintiff must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial

6

risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves "culpable recklessness"—that is, actions that "'evince[] a conscious disregard of a substantial risk of serious harm.'" *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*,143 F.3d at 702 (internal quotation marks and citation omitted).

"[A]n inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate indifference to inmate health or safety.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).

Under either standard, a plaintiff must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, a plaintiff must allege that a defendant was aware of a substantial risk that he would be seriously harmed if that defendant did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo*, 656 F.3d at 135. But "[o]fficials need

only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138 (citation omitted).

### 1.    Objective Prong

Campbell's prolonged exposure to smoke satisfies the objective prong for a conditions of confinement claim. *See Gumora v. City of New York*, No. 17 CIV. 2300 (LGS), 2018 WL 736018, at *5 (S.D.N.Y. Feb. 5, 2018) ("Courts in this district have consistently held that conditions of confinement that expose inmates to unreasonable levels of smoke satisfy the objective prong."). I similarly conclude that the medical issues caused by prolonged smoke exposure, including difficulty breathing and other painful conditions, constitute serious medical issues that satisfy the objective prong for a deliberate medical indifference claim. *See, e.g.*, *Williams v. City of New York*, No. 21CV1083PGGKHP, 2022 WL 21828497, at *17 (S.D.N.Y. Aug. 5, 2022) ("A reasonable person would find that prolonged exposure to smoke inhalation significantly affects an individual's breathing and, consequently, daily activities and has the potential to inflict substantial chest pain and death.").

I therefore conclude that the SAC alleges sufficient facts to satisfy the objective element for Campbell's Eighth Amendment challenges to both his conditions of confinement and lack of adequate medical treatment.

### 2.    Subjective Prong

I next evaluate whether Campbell has alleged facts to suggest any of the defendants acted with deliberate indifference to his unsafe conditions of confinement and serious medical needs.

### a.    Officer Koon

Campbell alleges that Officer Koon was aware that he was exposed to smoke in his cell and that the smoke caused him difficulty breathing and other medical problems. For initial pleading purposes, Campbell's allegations support the inference that Officer Koon failed to take any reasonable remedial action to ensure Campbell's safety and ensure he received medical attention. Accordingly, I permit Plaintiff to proceed on his Eighth Amendment claims for damages against Officer Koon due to his deliberate indifference to Campbell's harmful condition of confinement and serious medical needs.

### b.    Dr. Estime

Campbell alleges that an unnamed doctor—who examined him a day after his smoke exposure—advised that he needed an E.K.G test and X-rays of his chest and lungs, and that a nurse indicated he would be seen by his provider the following day. Campbell later states that Dr. Estime—who is his medical provider—failed to respond to his several inmate requests seeking medical treatment for conditions related to his exposure to the smoke on July 21, 2025. Campbell's allegations suggest that he did not receive adequate medical treatment for his breathing difficulty caused by the smoke until January 2026.

I do not understand the SAC to assert that Dr. Estime is liable for the unsafe conditions of confinement that Campbell experienced. Rather, mindful of Campbell's status as a *pro se* litigant, I construe the SAC to suggest Dr. Estime acted with indifference to Campbell's serious medical needs when Estime failed to address Campbell's breathing difficulties or provide the treatment ordered or recommended on July 22, 2025 by the prior examining physician. *See Quint v. Martin*, No. 3:21-CV-1695 (KAD), 2023 WL 319232, at *5 (D. Conn. Jan. 19, 2023) ("Intentionally failing to follow a doctor's order is sufficient to state a cognizable claim for

9

deliberate indifference to medical needs."); *see also Benn v. Nassau Cnty.*, 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010) (failure to comply with a doctor's order sufficient to survive initial review); *Woods v. Goord*, No. 01 CIV. 3255 (SAS), 2002 WL 731691, at *5 (S.D.N.Y. Apr. 23, 2002) (allegation that doctor ignored surgeon's order sufficient to survive motion to dismiss).

Because the SAC's allegations suggest Dr. Estime may have acted with deliberate indifference to Campbell's medical needs related to his smoke exposure, I permit Campbell to proceed for damages on an Eighth Amendment deliberate medical indifference claim against Dr. Estime. Dr. Estime's personal involvement in any Eighth Amendment medical indifference may be resolved through discovery and development of the factual record.

### c.    RCOO Cruz

The SAC alleges that Campbell sent administrative remedies to RCOO Cruz about his smoke exposure and lack of medical treatment for conditions related to his smoke exposure.

Campbell has not alleged facts to support any inference that RCOO Cruz was personally involved in deliberate indifference to his smoke exposure or lack of medical care. No alleged facts indicate that RCOO Cruz received, reviewed, or entered a disposition on Campbell's administrative remedies. Moreover, receipt alone of grievances or letters generally "does not amount to personal involvement." *Brown v. Laino*, No. 24-CV-06677, 2025 WL 3228035, at *9 (S.D.N.Y. Nov. 19, 2025) (citation and internal quotation marks omitted); *see also Dorlette v. City of Stamford*, No. 23-CV-1589, 2025 WL 2076036, at *2 (D. Conn. July 23, 2025) (concluding a defendant's failure to respond to plaintiff's complaint was insufficient to show personal involvement) (citing cases). I conclude Campbell has not alleged facts sufficient to reflect that RCOO Cruz was aware that he had been exposed to the harmful

condition of prolonged smoke exposure or that he had serious need for medical treatment resulting from his smoke exposure.

Accordingly, I dismiss without prejudice Campbell's Eighth Amendment claims against RCOO Cruz as not plausible. *See* 28 U.S.C. § 1914A(b)(1).

### d.    Warden Guadarrama and Shift Commander Valentin

The SAC indicates Campbell sent administrative remedies to Guadarrama and Valentin to complain about his exposure to smoke in his cell and express his need for medical assistance. It is not clear from the SAC whether Guadarrama or Valentin received, reviewed or responded to Campbell's administrative remedies.

In addition, Campbell cannot hold Warden Guadarrama and Shift Commander Valentin liable for the failure by prison staff to remove Campbell from the smoke-filled cell absent a showing of their personal involvement. The SAC does not describe how Guadarrama or Valentin acted with deliberate indifference to Campbell's dangerous confinement in a smoke-filled cell. Campbell has not pleaded facts to suggest that Guadarrama or Valentin failed to take remedial action despite being aware that Campbell remained in a cell that was filled with smoke.

Nor can Campbell hold these defendants liable for medical indifference because of any failures by MWCI staff to respond to Campbell's needs. The facts pleaded in the SAC are not sufficient to support a claim that either Guadarrama or Valentin delayed or interfered with Campbell's access to medical care. *Estelle*, 429 U.S. at 104-05 (noting Eighth Amendment indifference may be manifested by prison guards who intentionally deny or delay access to medical care or intentionally interfering with the prescribed treatment).

11

As previously noted, Campbell does not establish that the supervisory officials named in the SAC, Warden Guadarrama and Shift Commander Valentin, were personally involved in an Eighth Amendment violation based on the past deliberately indifferent conduct by subordinate prison staff. *See Scott v. Guadarrama,* No. 3:25-CV-1117 (SVN), 2025 WL 3754208, at *5 (D. Conn. Dec. 29, 2025) (explaining that "section 1983 claimants can no longer rely on the theories of supervisory liability or failure to discipline to establish a supervisor's personal involvement in a constitutional violation" after *Tangreti*) (citation and internal quotation marks omitted).

Thus, I do not permit Plaintiff to proceed for damages on his Eighth Amendment claims against Warden Guadarrama or Shift Commander Valentin.

### B.    Official Capacity Relief

Campbell seeks unspecified official capacity relief against Defendants. To the extent he pursues official capacity claims for monetary damages against Defendants (all presumably state employees), such claims are dismissed as barred by state sovereign immunity. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Campbell may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he plausibly alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846-47). A claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged

12

ongoing constitutional violation. *See Scozzari v. Santiago*, No. 3:19-CV-229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

The SAC alleges that Campbell is now receiving medical treatment for his breathing difficulty caused by his smoke exposure. Read liberally, I construe the SAC to suggest that Campbell is suffering an ongoing violation of his Eighth Amendment right to adequate medical treatment.

Accordingly, I permit Campbell to proceed on an Eighth Amendment official capacity claim against Dr. Estime, who could plausibly provide him with relief for any ongoing medical indifference.

## IV.   CONCLUSION AND ORDERS

For the foregoing reasons, I conclude as follows:

(1) Campbell may proceed on his claims for damages against Officer Koon and Dr. Estime in their individual capacities for his claims that he experienced unsafe conditions of confinement and deliberate medical indifference in violation of the Eighth Amendment.

(2) Campbell may proceed against Dr. Estime in his official capacity on his claim for injunctive relief for deliberate medical indifference in violation of the Eighth Amendment.

(3) All other claims are DISMISSED WITHOUT PREJUDICE. The clerk is instructed to terminate RCOO Jennifer Cruz, Warden Guadarrama, and Shift Commander Valentin as defendants in this action.

Campbell has two options as to how to proceed in response to this Initial Review Order:

**Option One:** If Campbell wishes to proceed immediately **only** on the claims against Officer Koon and Dr. Estime as set forth in paragraph one, he may do so without further delay. If Campbell selects this option, he shall file a notice on the docket on or before July 31, 2026 informing the court that he elects to proceed with service as to the claims against Officer Koon and Dr. Estime as set forth in this paragraph. The court will then begin the effort to serve process in the capacity described above.

**Option Two:** Alternatively, if Campbell wishes to attempt to replead any of the claims asserted in the Second Amended Complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint on or before July 31, 2026. The Third Amended Complaint, if filed, will completely replace the Second Amended Complaint, and the court will not consider any allegations made in the prior pleadings in evaluating the Third Amended Complaint. The court will review the Third Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Campbell elects to file a Third Amended Complaint, the complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Campbell before **July 31, 2026,** the court will presume that Campbell wishes to proceed on the Second Amended Complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Campbell changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Campbell should write PLEASE NOTE MY NEW ADDRESS on the notice. It

is not enough to just put the new address on a letter without indicating that it is a new address. If Campbell has more than one pending case, he should indicate all the case numbers in the notification of change of address. Campbell should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
June 29, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge